UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
****************************************************
                                          *
STEVEN KARAS and                          *
GAIL KARAS,                               *
              Plaintiffs                  *
                                          *   Civil Action No.
v.                                        *
                                          *
LIBERTY INSURANCE CORPORATION,            *   December 11, 2013
              Defendant                   *
                                          *
****************************************************
```

## COMPLAINT

NOW COME the plaintiffs, Steven Karas and Gail Karas, by their attorney, Michael D. Parker, Esq., complaining of the defendant, Liberty Insurance Corporation, as follows:

## PARTIES

1.     The plaintiffs, Steven Karas and Gail Karas (hereinafter "the Karases"), own and occupy the residential property located at 188 Hatch Hill Road, Vernon, Connecticut.

2.     The defendant, Liberty Insurance Corporation, ("Liberty Mutual"), is an insurance company incorporated under the laws of Illinois and has a principal place of business at 175 Berkeley Street, Boston, Massachusetts.  At all times material to this claim, Liberty Mutual was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut, as a member of the Liberty Mutual Group.

## JURISDICTION

3. This Honorable Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1332(a) as this action involves citizens of different states and the amount of controversy exceeds $75,000.00 exclusive of interest and costs.

## GENERAL ALLEGATIONS

4. The Karases purchased the residential property located at 188 Hatch Hill Road, Vernon, Connecticut in December of 2010. The residence was constructed in 1984.

5. The Karases have insured their home at 188 Hatch Hill Road at all times since the year 2010 with a Homeowner's Policy issued by Liberty Mutual.

6. The Karases paid the premium charged by Liberty Mutual each year and, without further action on the Karases' part, the subject policy was automatically renewed by Liberty Mutual yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid. A copy of the most recent complete Homeowner's Policy issued by Liberty Mutual to the Karases is attached hereto, made a part hereof, and marked as Exhibit A.

## COUNT I
### (Breach of Contract)

7. The plaintiffs reallege in this Count I the allegations set forth in paragraphs 1 through 6 above as if the same were herein separately set forth.

8. In October of 2013, the Karases removed the sheetrock finishing in their basement to determine the source of mold that had appeared on the base of the sheetrock and the source of an odor present in the basement.

9. Once the sheetrock finishing had been removed, a series of horizontal and vertical cracks were apparent throughout most of the basement walls of their home.

10. The Karases immediately undertook an investigation of this condition, its cause, and the methods of repair by consulting with various contractors in October of 2013.

11. Upon further inquiry into the cause of the deterioration and the potential methods of repair, the Karases discovered that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

12. The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

13. There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

14. At some point between the date on which the basement walls were poured and the month of October, 2013 the basement walls suffered a substantial impairment to their structural integrity.

15. It is only a question of time until the basement walls of the Karases' home will fall in due to the exterior pressure from the surrounding soil.

16. With the falling in of the basement walls, the entire home will fall into the basement.

17. The Karases first learned of the existence of this substantial impairment in early October of 2013 during the process of soliciting estimates from contractors and promptly notified Liberty Mutual on November 15, 2013 of the condition of their basement walls.

18. The Karases made a timely claim for coverage of the loss in accordance with the terms of the Homeowner's Policy and the policies issued during the preceding policy years.

19. Liberty Mutual's claims representative denied the Karases' claim for coverage that same day by way of letter claiming that the Homeowner's Policy does not afford coverage for deterioration. A copy of the denial letter dated November 15, 2013 is attached hereto, made a part hereof, and marked as Exhibit B.

20. Pursuant to the terms of the Homeowner's Policy, Section I – Property Coverages, Additional Coverages, ¶ 8, as amended by the Special Provisions - Connecticut endorsement, Liberty Mutual agreed to provide coverage for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:…(b) Hidden decay;… or (f) Use of defective material or methods in construction, remodeling or renovation." Exhibit A, form HO 00 03 04 91 page 5 of 16, as amended by form FMHO 3223 02 12, page 2 of 4.

21. The grounds offered by Liberty Mutual for the denial of coverage are contrary to the express provisions of the Homeowner's Policy. Exhibit B.

22. In denying coverage, as alleged, Liberty Mutual breached its contractual obligation under the Homeowner's Policy, all to the financial loss and damage of the Karases.

23. Based on the estimates of contractors who have performed replacements to the basement walls of similar structures in the area of the Karases' home, the cost of replacing the

basement walls, along with the related restoration of the deck, landscaping, driveway and walks, is expected to be not less than $175,000.00.

## COUNT II
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

24. The plaintiffs reallege in this Count II the allegations set forth in paragraphs 1 through 23 above and paragraphs 38 through 45 below as if the same were herein separately set forth.

25. The Karases submitted their claim for coverage to Liberty Mutual on November 15, 2013.

26. Liberty Mutual denied the Karases' claim that same day.

27. This denial of coverage was made without the benefit of any inspection of the basement walls of the Karases' residence to verify the damage or its possible causes.

28. In denying the claim, Liberty Mutual ignored the coverage provided for collapse and denied the Karases' claim based upon other policy provisions clearly inapplicable and wholly immaterial to the Karases' claim for coverage.

29. Upon information and belief, Liberty Mutual intentionally cited portions of the policy wholly inapplicable to the Karases' claim for coverage knowing full well that the Karases, like most insureds, are unsophisticated with respect to the complex language contained in insurance policies.

30. Upon information and belief, Liberty Mutual acted intentionally to mislead the Karases and convince them that the damage suffered to their home was not covered solely to preserve its own assets by avoiding payment of a covered loss.

31. By denying coverage in this manner, Liberty Mutual has impeded the Karases right to receive benefits that they reasonably expected to receive under the contract for homeowner's insurance.

32. Liberty Mutual has acted in bad faith and violated the implied covenant of good faith and fair dealing in the performance of its duties by denying the Karases' claim for coverage under the Homeowner's Policy.

33. Upon information and belief, and based in part upon those facts alleged in paragraphs 38 through 45 below, Liberty Mutual has a general business practice of acting intentionally to mislead its insureds into believing that the collapse of the basement walls of a building caused by hidden decay or by the use of faulty or defective materials or methods of construction is not a covered loss.

34. As a direct cause of Liberty Mutual's bad faith, the Karases have suffered loss and damages including loss of monies owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on liquidated funds due them under said policy of insurance.

## COUNT III
### (Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practice Act and the Connecticut Unfair Trade Practices Act)

35. The plaintiffs reallege in this Count III the allegations set forth in paragraphs 1 through 34 above as if the same were herein separately set forth.

36. Liberty Mutual is an insurance company licensed and qualified to engage in the business of insurance within the State of Connecticut.

37. Liberty Mutual issued a homeowner's insurance policy to the Karases that provides coverage for the collapse of an insured structure caused by hidden decay or the use of defective materials or methods in construction.

38. Liberty Mutual, upon information and belief, participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims.

39. The ISO is also instrumental in drafting policy provisions and it prepares interpretations or advice as to the meaning of these provisions.

40. Liberty Mutual has not informed its policy holders, including the Karases, of its participation in or of the operations of the ISO.

41. Through the ISO, Liberty Mutual has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the Karases' home, and typically related to the use of defective materials or methods in construction. For the purpose of identification, such claims are referred to as "concrete decay" claims.

42. Through the ISO, Liberty Mutual has knowledge that most, if not all, insurers responding to concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes, such as:

    i. ordinary wear and tear;

    ii. water beneath the surface of the ground;

        iii.    earth movement and/or settling;

        iv.    homeowner negligence in failing to waterproof the exterior of the concrete; or

        v.    on the grounds that the claim was not presented in a timely manner.

43.    Through the ISO, Liberty Mutual has knowledge of cases such as *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530 (JCH), where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language identical to that in the Karases' policy (see para. 20 above).

44.    Notwithstanding Liberty Mutual's knowledge of the specific policy language alleged in paragraph 20 and the definition of the word "collapse" as it is used in Section I – Property Coverages, Additional Coverages, para. 8, Liberty Mutual gave the insured a knowingly false and misleading reason for the denial of coverage.

45.    By Liberty Mutual's denial of coverage on January 10, 2013 on untenable grounds, it has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of the Homeowner's Policy, including any previous iterations of that policy, to the contrary.

46.    Liberty Mutual, based on the facts alleged in Counts I & II above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by one or more of the series of homeowner's insurance policies issued to the Karases.

47.    Liberty Mutual, based in part on the facts alleged in paragraphs 38 through and including 45 above, has regularly been engaged, as part of its general business practice, in

refusing to attempt in good faith to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear.

48. Liberty Mutual's participation in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice is further confirmed by its refusal to provide coverage in at least three (3) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Karases' policy (see para. 20 above). *See Roberts v. Liberty Mutual Fire Insurance Company,* Connecticut Federal District Court Civil Action No., 3:13-cv-00435 (SRU); *Matthews v. Peerless* Connecticut Federal District Court Civil Action No. 3:12-cv-01506 (WWE); *Waters v. Liberty Mutual Group, Inc., et al.,* Massachusetts Superior Court, Hampden Division, Docket No. 06-131.

49. Liberty Mutual has also participated in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice by virtue of its membership in the Liberty Mutual Group.

50. By failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice, Liberty Mutual has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act. *Conn. Gen. Stat.* § 38a-816(6)(F).

51. By engaging in this conduct prohibited by the Connecticut Unfair Insurance Practices Act, Liberty Mutual has also violated the Connecticut Unfair Trade Practices Act. *Conn. Gen. State.* § 42-110a, *et seq.*

52. As a direct cause of Liberty Mutual's unfair and deceptive trade practices, the Karases have suffered loss and damages including loss of moneys owed pursuant to their

contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

**WHEREFORE**, the plaintiffs, Steven Karas and Gail Karas, claim the following relief against the defendant, Liberty Insurance Corporation, on each count:

1. Just fair and reasonable money damages against the defendant;

2. Pre judgment and post judgment interest pursuant to *Conn. Gen. Stat* § 37-3a and any other applicable statutes;

3. Attorney's fees and costs pursuant to *Conn. Gen. Stat*. §42-110g and any other applicable statute;

4. Punitive damages pursuant to *Conn. Gen. Stat*. §42-110g;

5. Such other and further relief as the court deems just and equitable.

**The Plaintiffs Demand a Trial by Jury on All Counts So Triable.**

        **PLAINTIFFS,**
        **STEVEN KARAS AND**
        **GAIL KARAS**

        By: */s/ Michael D. Parker, Esq.*
           Michael D. Parker, Esq.
           One Monarch Place, Suite 2220
           Springfield, MA 01144
           (413) 736-4101 – *Telephone*
           (413) 736-4582 – *Facsimile*
           mparker@mdparkerlaw.com
           Federal Bar #ct29403