UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN KARAS and GAIL KARAS,<br>    Plaintiffs,<br><br>    v.<br><br>LIBERTY INSURANCE CORP.,<br>    Defendant. | No. 3:13cv01836 (SRU) |

## RULING ON MOTION TO DISMISS

Steven and Gail Karas (the "Karases") bring suit against their homeowner's insurance provider, Liberty Insurance Corporation ("Liberty Mutual"), for its alleged failure to indemnify them for damages to the basement walls of their home.[1] The complaint contains three counts alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816 *et seq.* ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"). Liberty Mutual argues that the plaintiffs' complaint should be dismissed in its entirety for failure to state a claim. For the reasons stated below, I **DENY** defendant's motion to dismiss (doc. #12).

**I.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d

---

[1] Liberty Insurance Corporation is part of the Liberty Mutual Group. Compl. at ¶ 2. This court adopts "Liberty Mutual" in this ruling to refer to Liberty Insurance Corporation, as the plaintiff does in the complaint.

636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.    Background[2]

Liberty Mutual insures the Karases' home. In October 2013, the Karases noticed a series of horizontal and vertical cracks in the basement walls of their home. They immediately investigated the condition and discovered that the cracks were due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company. The aggregate that company used to

---

[2] All background information is taken from the plaintiffs' complaint, unless otherwise noted.

manufacture concrete at the time contained a chemical compound which, when mixed with water, sand, and cement necessary to form the concrete, began to oxidize and expand, breaking the bonds of the concrete internally and reducing it to rubble.  There is no known way to reverse the deterioration, which continues whether or not there is visible water present.  At some point between the date on which the basement walls were poured and October 2013, the structural integrity of the basement walls suffered a substantial impairment.  It is only a question of time until the basement walls of the Karases' home will fall in, and as a result the entire home will fall into the basement.

The Karases first learned of the existence of the substantial impairment in October 2013 and notified Liberty Mutual on November 15, 2013 of their claim for coverage under the Homeowner's Policy (the "Policy").  Liberty Mutual's claims representative denied the claim that same day by letter claiming that the policy does not afford coverage for deterioration.  The Policy provides coverage for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . (b) Hidden decay; . . . or (f) Use of defective material or methods in construction, remodeling or renovation." Compl. Ex. A, at 12, 32 (doc. #1-1).  The Karases allege that Liberty Mutual's denial of coverage breached its contractual obligation under the Policy.

This action followed, and the Karases have brought claims alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of CUIPA and CUTPA.  On February 18, 2014, Liberty Mutual filed a Motion to Dismiss the Complaint in its entirety.

### III.  Discussion

    A.  <u>Count One: Breach of Contract</u>

The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *Flagstar Bank, FSB v. Ticor Title Ins. Co.*, 660 F. Supp. 2d 346, 350 (D. Conn. 2009); *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 291 (2014).

Construing the allegations in the light most favorable to the plaintiffs, the Karases have alleged the existence of insurance for the Karases' home issued by Liberty Mutual, and thus have shown the formation of an agreement. *See* Compl. at ¶ 6; Compl. Ex. A (doc. #1-1). The Karases have also shown their performance of the agreement, which allegedly includes the payment of premium each year and a timely claim for coverage. *See* Compl. at ¶¶ 6, 18.

With respect to the breach of the agreement, the Karases allege that the basement walls suffered a substantial impairment to their structural integrity, which constitutes a collapse. *See Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 251-53 (1987) (finding the term "collapse" sufficiently ambiguous to include coverage for any "substantial impairment of the structural integrity of a building"). The collapse was allegedly caused by the use of a defective concrete and its decay. The Karases allege that their loss should be covered by the Policy, but Liberty Mutual denied the coverage and therefore breached the agreement. Liberty Mutual moves to dismiss the claim, however, because the basement walls are the "foundation" or "retaining walls" of the house, which are excluded from coverage.[3]

If the words in the policy are plain and unambiguous, the language must be accorded its natural and ordinary meaning; however, if the insurance coverage is defined in terms that are ambiguous, such ambiguity is resolved against the insurer, and the construction most favorable to the insured will be adopted. *See Empire Fire & Marine Ins. v. Lang*, 655 F. Supp. 2d 150,

---

[3] The Policy provides that "[l]oss to . . . [a] foundation, [or] retaining wall . . . is not included [under coverage for a collapse caused by hidden decay or use of defective material or methods in construction, remodeling or renovation] unless the loss is a direct result of the collapse of a building." Compl. Ex. A, at 12, 32 (doc. #1-1).

4

156-57 (D. Conn. 2009); *Peerless Ins. Co. v. Gonzalez*, 241 Conn. 476, 482 (1997); *Beach*, 205 Conn. at 249-50.  A contract is unambiguous when its language conveys a definite and precise meaning.  *Mount Vernon Fire Ins. Co. v. El Rancho De Pancho LLC*, No. 3:12cv00459 (WGY), 2013 WL 6326609, at *3 (D. Conn. Nov. 22, 2013); *Isham v. Isham*, 292 Conn. 170, 181 (2009); *Poole v. City of Waterbury*, 266 Conn. 68, 88 (2003).  If the language is susceptible to more than one reasonable interpretation, the contract is ambiguous.  *El Rancho De Pancho*, 2013 WL 6326609, at *3; *Isham*, 292 Conn. at 181; *Poole*, 266 Conn. at 88.[4]  Nevertheless, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.  *Poole*, 266 Conn. at 88; *Kelly v. Figueiredo*, 222 Conn. 31, 37 (1992).

   Liberty Mutual argues that the undefined terms "foundation" and "retaining wall" should be interpreted on the basis of their dictionary definitions.  *See New London Cnty. Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166 (2013) (finding it proper to turn to the dictionary definition when determining the meaning of an undefined term in an insurance policy).  The Merriam-Webster Dictionary, as Liberty Mutual argues, defines "foundation" as "a usually stone or concrete structure that supports a building from underneath; . . . an underlying base or support; *especially*: the whole masonry substructure of a building"; "retaining wall" is defined as "a wall built to resist lateral pressure other than wind pressure; *esp*: one to prevent an earth slide."  Def.'s Mem. Supp. Mot. Dismiss 5-6, 8.  Liberty Mutual further argues that the United States District Court for the District of New Jersey held in *Wurst v. State Farm Fire & Cas. Co.*, 431 F.

---

[4] In *Poole*, the Connecticut Supreme Court interpreted a health care coverage agreement between retired firefighters and a city, which provided that the city "shall continue in full force and effect the medical benefits for each . . . employee who retires . . . after [the execution of this agreement]."  266 Conn. at 92.  The Court held that both parties' interpretations of the provision—the benefits shall continue throughout the retirement or stop when the agreement expires—were reasonable, thus the agreement was ambiguous.  *Id.*  In *Isham*, the Court interpreting the alimony provision in the parties' separation agreement held that both interpretations of the term "salary"—to include or to not include bonuses—are reasonable, therefore the agreement was ambiguous.  292 Conn. at 184.

Supp. 2d 501, 506 (D.N.J. 2006) that "foundation" in an insurance policy includes the basement walls.  In contrast, the Karases argue that the dictionary definition of "foundation" could be the footing upon which the basement walls rest, which does not include the basement walls.  *See Bacewicz v. NGM Ins. Co.*, No. 3:08cv1530 (JCH), 2010 WL 3023882, at *4 (D. Conn. Aug. 2, 2010) (citing *Turner v. State Farm Fire & Cas. Co.*, 614 So. 2d 1029, 1032 (Ala. 1993)) (finding that "foundation" could mean the piece of concrete at the base of the wall rather than a concrete basement wall itself, thus the term is ambiguous).  The Karases also argue that the Encyclopaedia Britannica defines "retaining wall" as a "freestanding wall that either resists some weight on one side or prevents the erosion of an embankment."  Pls.' Mem. Opp'n Def.'s Mot. Dismiss 8-9.  Each party thus has a reasonable but different interpretation of the phrases supported by dictionaries and case law, so the phrases are ambiguous, and the insurance policy should be construed against Liberty Mutual.  Therefore, the Karases have alleged facts that constitute a breach of the agreement by the other party.

     Moreover, the Karases have alleged that they have incurred financial loss and damage because of Liberty Mutual's alleged breach of agreement, which includes the cost of replacing the basement walls, along with the related restoration of the deck, landscaping, driveway and walks.  In addition, the Karases allege that the substantial impairment took place at some point between the date on which the basement walls were poured and the date on which they discovered the impairment, which includes the period covered by the Policy, thus the Karases' factual allegation with regard to the time when the loss occurred is also enough to raise their right to relief above the speculative level.  Therefore, the Karases' factual allegations constitute a plausible claim for breach of contract.  Accordingly, Liberty Mutual's motion to dismiss Count One is denied.

B.  Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

The duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.  *Garbinski v. Nationwide Mut. Ins. Co.*, No. 3:10cv1191 (VLB), 2011 WL 3164057, at *8 (D. Conn. July 26, 2011); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004).  Every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.  *Garbinski*, 2011 WL 3164057, at *8; *De La Concha*, 269 Conn. at 432.  To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.  *Garbinski*, 2011 WL 3164057, at *8; *De La Concha*, 269 Conn. at 433.  Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake regarding one's rights or duties, but by some interested or sinister motive.  *Garbinski*, 2011 WL 3164057, at *8; *Habetz v. Condon*, 224 Conn. 231, 237 (1992).  Bad faith means more than mere negligence; it involves a dishonest purpose.  *Garbinski*, 2011 WL 3164057, at *8; *Habetz*, 224 Conn. at 237.  An insurer's failure to conduct an adequate investigation of a claim, when accompanied by other evidence, reflecting an improper motive, properly may be considered as evidence of bad faith.  *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 801 (2013).  In the absence of a breach of an express duty under the insurance policy, however, there is no independent cause of action for the breach of the implied covenant of good faith and fair dealing.  *Id.*

As discussed above with respect to Count One, the Karases have alleged a plausible claim of breach of contract.  The Karases also allege that Liberty Mutual's denial of coverage

7

was made without the benefit of any inspection of the basement walls at issue in order to verify the damage or its possible causes.  The Karases further allege that Liberty Mutual ignored the coverage provided for "collapse," intentionally cited inapplicable policy provisions, and misled the Karases solely for the purpose of preserving its own assets.  These factual allegations describe the failure of Liberty Mutual to conduct an adequate investigation, accompanied by its intent to mislead the insured and a motive to benefit itself.  Thus the complaint alleges the existence of bad faith.  Accordingly, Liberty Mutual's motion to dismiss Count Two is denied.

### C.  Count Three: Violation of CUIPA/CUTPA

A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision.  *See McCulloch v. Hartford Life and Acc. Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005); *Mead v. Burns*, 199 Conn. 651, 663 (1986).  In order to sustain a CUIPA cause of action under CUTPA, the plaintiff must allege conduct that is proscribed by CUIPA.  *McCulloch*, 363 F. Supp. 2d at 181; *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 625 (2006).  The plaintiff must also allege that the proscribed act proximately caused the harm alleged.  *See McCulloch*, 363 F. Supp. 2d at 181; *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997).  A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice.  *See* Conn. Gen. Stat. § 38a-816(6); *Bacewicz v. NGM Ins. Co.*, No. 3:08cv1530 (JCH), 2009 WL 1929098, at *3 (D. Conn. June 30, 2009); *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 672 (1992).  The plaintiff must show more than a single act of insurance misconduct; isolated instances of unfair settlement practices are not sufficient to establish a claim.  *See Bacewicz*, 2009 WL 1929098, at *3; *Lees v.*

*Middlesex Ins. Co.*, 229 Conn. 842, 848-49 (1994); *Quimby*, 28 Conn. App. at 672; *Mead*, 199 Conn. at 663-64.

The Karases allege that Liberty Mutual gave them a knowingly false and misleading reason for the denial of coverage, and thus failed to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," which is proscribed by CUIPA[5]. The Karases also allege that they have suffered loss and damages caused proximately by Liberty Mutual's alleged misconduct. The Karases further allege that Liberty Mutual and its related entities have refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the Karases' policy.[6] Those allegations plausibly allege that Liberty Mutual has committed the proscribed act with sufficient frequency to indicate a general business practice. Therefore, the complaint states a plausible claim for violation of CUTPA. Accordingly, Liberty Mutual's motion to dismiss Count Three is denied.

**IV.     Conclusion**

For the reasons stated above, I **DENY** defendant's motion to dismiss (doc. #12).

It is so ordered.

Dated at Bridgeport, Connecticut, this 21st day of July 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[5] CUIPA provides that unfair claim settlement practices include "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" "with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816(6)(F).

[6] Compl. at ¶ 4 (citing *Roberts v. Liberty Mut. Fire Ins. Co.*, No., 3:13cv00435 (D. Conn. filed Apr. 1, 2013); *Matthews v. Peerless*, No. 3:12cv01506 (D. Conn. dismissed Oct. 4, 2013); *Waters v. Liberty Mut. Grp., Inc.*, No. 06-131 (Mass. Supp.)).