*********************************************
STEVEN KARAS and
GAIL KARAS,
          Plaintiffs

v.

LIBERTY INSURANCE CORPORATION,
          Defendant

Civil Action No.
3:13-cv-01836-SRU

January 10, 2018

*********************************************

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR CERTIFICATION OF QUESTIONS TO THE CONNECTICUT SUPREME COURT

NOW COME the plaintiffs, Steven Karas and Gail Karas (hereinafter referred to as "the Karases"), and submit the following Memorandum of Law in Opposition to the defendant, Liberty Insurance Corporation's (hereinafter "Liberty"), Motion for Certification of Questions to the Connecticut Supreme Court. In its motion, Liberty requests the certification of three questions to the Connecticut Supreme Court:

1. Is "substantial impairment of structural integrity" the applicable standard for "collapse" under the provision at issue?

2. If the answer to question one is yes, then what constitutes "substantial impairment of structural integrity" for purposes of applying the "collapse" provision of this homeowners insurance policy?

3. Under Connecticut law, do the terms "foundation" and/or "retaining wall" in a homeowner's insurance policy unambiguously include basement walls? If not, and if those terms are ambiguous, should extrinsic evidence as to the meaning of "foundation" and/or "retaining wall" be considered?

The Karases suggest that the proposed questions are not appropriate for certification to the Connecticut Supreme Court. An issue is not appropriate for certification where "existing decisions from the Connecticut Supreme Court and United States District Court adequately address the issues presented." *Gervais v. Riddle Assoc., P.C.,* 363 F.Supp.2d 345, 356 (D. Conn. 2005). The Karases suggest that existing body of law from both the Connecticut appellate courts and this District adequately address the issues presented and, therefore, certification of the proposed questions is unnecessary and unwarranted.

**A.** **Certification is Not Necessary with Respect to the Meaning of the Term "Collapse" in the Policies Issued by Liberty.**

There is no reason to certify a question to the Connecticut Supreme Court as to the meaning of the term "collapse" in Liberty's policies. The Connecticut Supreme Court has already determined that the term "collapse," where undefined in an insurance policy, means "*any* substantial impairment of the structural integrity of a building." *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 252 (1987)(emphasis added). That Liberty disagrees with the holding of *Beach* does not negate that this matter is binding precedent on point with the issues in this matter. *See Roy v. Liberty Mut. Fire Ins. Co.,* Memorandum of Decision, p. 11 (Conn. Super. 2017) (Declining to adopt the *Queen Anne* standard of collapse as the Court was bound by *Beach's* definition of the term "collapse"), attached hereto at Exhibit 1; *see also Gabriel v. Liberty Mut. Fire Ins. Co.,* 2017 WL 6731713, * 7 (D.Conn. 2017)(Finding that certification is inappropriate because *Beach* defined the term collapse to mean substantial impairment to structural integrity). The notion that the policy at issue here makes a distinction between excluded "settling, shrinking, bulging, or expansion" and "collapse" does not change the result as *Beach* itself dealt with policy language that too made the distinction between damage consisting

solely of "settling, shrinking, bulging, or expansion" and damage rising to the level of "collapse." *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 250 (1987). Liberty simply seeks the opportunity to undo Connecticut law in its favor.

An issue is not appropriate for certification where "existing decisions from the Connecticut Supreme Court and United States District Court adequately address the issues presented." *Gervais v. Riddle Assoc., P.C.,* 363 F.Supp.2d 345, 356 (D. Conn. 2005). Here we have a Connecticut Supreme Court decision as to the meaning of the term "collapse" for purposes of homeowners insurance coverage. However, even if Liberty is correct in suggesting that *Beach* is not, by itself, dispositive of this issue due to the slight difference in policy language that slight difference alone does not require certification. Existing decisions from this Honorable Court on the precise policy language at issue in this matter adequately address the meaning of the term "collapse" as found in Liberty's policies, by analyzing that policy language in light of the *Beach* standard. In that regard, this Honorable Court has found that the "collapse" provision at issue in this matter is ambiguous and may be reasonably found to provide coverage where there has been a substantial impairment to the structural integrity of an insured building. *See e.g. Roberts v. Liberty Mut. Fire Ins. Co.,* 264 F.Supp.3d 394, 404-409 (D.Conn. 2017). As a result, this Honorable Court has typically found that certification of this issue is unwarranted. *See Belz v. Peerless Ins. Co.,* 204 F.Supp.3d 457, 464 (D. Conn. 2016) ("The Court finds no reason to adopt Washington State Law when the standard in Connecticut is relatively clear, nor is there a need for certifying the issue to the Connecticut Supreme Court. The Connecticut Supreme Court has already held that a 'collapse' for home insurance purposes may include 'substantial impairment to the structural integrity of a building.'"); *see also Metsack v. Liberty Mut. Fire Ins.*

*Co.,* 2017 WL 706599, * 5 (D. Conn. 2017)("Further, *Beach* supports finding certification inappropriate, because it treats the question of whether a house was "substantially impaired" as one of fact, not one of law.").

Liberty offers *Tustin Field* to suggest that *Beach* does not apply to its policy, however, a careful review of *Tustin Field* makes plain that California law with respect to collapse coverage is simply at odds with Connecticut law. *Tustin Field* simply applies California precedent, found in *Doheny West,* which held that substantial impairment is not sufficient for collapse coverage, but that collapse must be "actual or imminent." *Doheny West Homeowner's Ass'n v. American Guarantee & Liability Ins. Co.,* 60 Cal.App.4th 400, 406 (Cal. Ct. App. 1997). In reaching this conclusion, *Doheny West* analyzed a prior California Supreme Court case which interpreted a policy provision similar to that found in *Beach.* In *Sabella*, the California Supreme Court was faced with a policy provision that that excluded coverage for "settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings; [unless collapse ensues]." *Sabella v. Wisler,* 59 Cal.2d. 21, 26 (Cal. 1963). *Sabella* determined that no "collapse" occurred because the home remained usable and continued to be occupied. *Id.* As a result, it appears that *Tustin Field* correctly determined that under California law substantial impairment to structural integrity does not constitute a collapse as a matter of law. *Tustin Field Gas & Food, Inc. v. Mid-Century Ins. Co.,* 2017 WL 283913, * 4 (Cal. Ct. App. 2017) *citing Doheny West Homeowner's Ass'n v. American Guarantee & Liability Ins. Co.,* 60 Cal.App.4th 400, 405-406 (Cal. Ct. App. 1997). *Tustin Field* and its predecessors are of little consequence to the analysis of this matter as it is Connecticut law that applies to this controversy, not California law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996).

### B. Certification is Not Necessary with Respect to the Meaning of "Substantial Impairment to Structural Integrity."

Liberty suggests that if the *Beach* standard applies to its "collapse" coverage, certification is still warranted to define the parameters of what constitutes "a substantial impairment to structural integrity." The Karases suggest that certification is not warranted on that point as the Connecticut Supreme Court has provided binding guidance in that regard. While Beach did not, explicitly, offer parameters for what conditions constitute a "substantial impairment," its progeny has recognized that *Beach* left that determination to the fact finder. *See Sansone v. Nationwide Mut. Fire Ins. Co.,* 47 Conn. Supp. 35, 41 (Conn. Super. 1999) *aff'd,* 62 Conn. App. 526 (2001); *see also Metsack v. Liberty Mut. Fire Ins. Co.,* 2017 WL 706599, * 5 (D. Conn. 2017). As a result, what constitutes a "substantial impairment" is quite clearly a matter for the fact finder, likely aided by expert analysis, which analysis is to be weighed by the fact finder in the ordinary course of a trial. Certification is only appropriate where there is "no controlling appellate decision…" Conn. Gen. Stat. § 51-199b(d); Conn. Practice Book § 82-1. As the issues of (i) when a "collapse" occurs for purposes of an insurance policy leaving the term undefined and (ii) whether the determination of a "substantial impairment" to structural integrity is a question of law or a question of fact have both been defined on an appellate level, certification seems inappropriate.

Liberty offers the *Queen Anne Park* decision, wherein the Ninth Circuit Court of Appeals certified a question to the Washington Supreme Court asking for a definition for the undefined term "collapse" in a property and casualty insurance policy, as reason for certification in this matter. *Queen Anne Park Homeowner's Ass'n v. State Farm Fire and Cas. Co.,* 763 F.3d 1232, 1234-1235 (9th Cir. 2014). However, *Queen Park* is materially different from this case with

respect to the body of Washington State law that existed at the time that the Ninth Circuit made the decision to certify that particular question of law. As noted by *Queen Anne Park,* at the time that the question was certified, the Washington Supreme Court had not yet addressed the meaning of the term "collapse" in the context of homeowner's or property insurance coverage. *Id.* To the contrary, it had expressly declined to address the issue in its most recent opinion on the scope of the "collapse" coverage. *Id. citing Sprague v. Safeco Ins. Co. of America,* 174 Wash.2d 524 (2012). Whereas, the Connecticut Supreme Court has not only addressed the meaning of the term "collapse," but specifically defined it. *Beach v. Middlesex Mut. Ass. Co.,* 205 Conn. 246, 253 (1987). That Liberty would prefer a different definition of the term collapse or a more thorough explanation as to what constitutes a substantial impairment to structural integrity, is of no moment as certification is only appropriate where no controlling appellate authority exists. Here we do have controlling appellate authority and *Queen Anne Park* does not change the fact that the Connecticut Supreme Court is free to leave to the fact finder the determination of what constitutes a substantial impairment to structural integrity rather than define it within the caselaw.

C. **Certification is Not Necessary with Respect to the Ambiguity of the Terms "Foundation" and "Retaining Wall."**

Liberty also suggests that it is appropriate to certify to the Connecticut Supreme Court the issue of whether the exclusion for damage to the "foundation" and "retaining walls" found in the collapse provision apply in these concrete decay matters. The Karases disagree with this suggestion and contend that this particular issue is not appropriate for certification. As discussed above, an issue is not appropriate for certification where "existing decisions from the Connecticut Supreme Court and United States District Court adequately address the issues

presented." *Gervais v. Riddle Assoc., P.C.,* 363 F.Supp.2d 345, 356 (D. Conn. 2005). There is sufficient legal authority, from both the Connecticut appellate courts and this Honorable Court to address this issue without certification.

This Honorable Court has specifically found that the term "foundation," as used in an identical collapse clause, was "reasonably susceptible to more than one meaning" and was, therefore, ambiguous on numerous occasions. *See e.g. Bacewicz v. NGM Ins. Co.,* 2010 WL 3023882, * 4 (D. Conn. 2010); *see also Roberge v. Amica Mut. Ins. Co.,* 2015 WL 9480008, *2-4 (D. Conn. 2015); *Metsack v. Liberty Mut. Fire Ins. Co., et al.,* 2015 WL 5797016, *5-8 (D. Conn. 2015); *Gabriel v. Liberty Mut. Fire Ins. Co.,* 2015 5684063, *2-4 (D. Conn. 2015); *Karas v. Liberty Ins. Corp.,* 33 F.Supp.3d 110, 115-116 (D. Conn. 2014); *Belz v. Peerless Ins. Co.,* 46 F.Supp.3d 157, 163-164 (D. Conn. 2014). A number of these matters also addressed the term "retaining wall," and similarly found that to be ambiguous in the context of the collapse provision. *See e.g. Metsack v. Liberty Mut. Fire Ins. Co., et al.,* 2015 WL 5797016, *8 (D. Conn. 2015); *Gabriel v. Liberty Mut. Fire Ins. Co.,* 2015 5684063, *4 (D. Conn. 2015); *Karas v. Liberty Mutual Ins. Co.,* 33 F.Supp.3d 110, 115-116 (D. Conn. 2014); *Belz v. Peerless Ins. Co.,* 46 F.Supp.3d 157, 164 (D. Conn. 2014). It cannot be said that the decisions of this District have left the issue of the ambiguity of the term "foundation" or "retaining wall" unaddressed.

While Liberty suggests that there is no appellate authority as to the ambiguity of the specific terms "foundation" and "retaining wall" as found in the additional coverage for "collapse," the Karases suggest that this position is quite myopic. While no appellate court may have addressed these two particular terms, the standards for insurance policy interpretation have been well established by the Connecticut appellate courts. Construction of an insurance policy

involves a determination of the parties' intent as expressed by the policy language. *Conn. Ins. Guar. Ass'n v. Fontaine,* 278 Conn. 779, 784 (2006). However, when performing this analysis, the court must construe the policy terms "as laymen would understand them and not according to the interpretation of sophisticated underwriters." *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009). In particular, "the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Id.* Where a term is susceptible to more than one reading, the term is construed against the insurance company as they drafted the policy terms. *New London County Mut. Ins. Co. v. Zachem,* 145 Conn. App. Ct. 160, 166 (2013). Ambiguous insurance policy terms are not only construed against the insurance company, they are construed in favor of coverage. *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D.Conn. 2010); *Beach v. Middlesex Assurance Co.,* 205 Conn. 246, 249-250 (1987).

This Honorable Court has had little trouble applying these standards of insurance policy interpretation in the context of the collapse provision and the exclusionary terms proffered by Liberty Mutual. Furthermore, this Honorable Court has, on multiple occasions, denied requests for certification of the ambiguity of the terms "foundation" and "retaining walls" – or alternatively phrased questions relating to the meaning or applicability of those terms – on the grounds that Connecticut law offers more than sufficient guidance as to the interpretation of insurance policy terms to allow this Honorable Court to analyze the ambiguity of these terms in the context of "collapse" coverage. *See Metsack v. Liberty Mut. Fire Ins. Co.*, *et al.,* 2015 WL 5797016, * 10 (D. Conn. 2015); *Gabriel v. Liberty Mut. Fire Ins. Co.,* 2015 5684063, * 4 (D. Conn. 2015); *Belz v. Peerless Ins. Co.,* 46 F.Supp.3d 157, 164 (D. Conn. 2014). The

Connecticut Supreme Court needn't address every term in every insurance policy, rather an appellate court should supply the tools necessary for lower courts to construe the terms of insurance policies in general. The Connecticut Supreme Court has done just that, and this Honorable Court has successfully used those tools to interpret the proffered exclusionary terms in the context of the collapse provision at issue. Certifying a question as to the meaning of the terms "foundation" and "retaining wall" in the context of collapse coverage is, therefore, unnecessary.

Much the same can be said of Liberty's request to certify the question of whether an examination of extrinsic evidence is necessary to clarify the meaning of the ambiguous terms "foundation" and "retaining wall." While the Connecticut Supreme Court has, admittedly, not considered the precise issue of whether these two particular exclusionary terms in this particular additional coverage for collapse must be construed by using extrinsic evidence. The Connecticut Supreme Court has, however, provided clear standards for the construction of insurance policy terms – as noted above. Liberty's request with respect to extrinsic evidence is more fundamentally flawed. Connecticut law is clear that a Court *may* examine extrinsic evidence to aid in ascribing meaning to an ambiguous policy term. *See Travelers Cas. and Sur. Co. of America v. Netherlands Ins. Co.,* 312 Conn. 714, 740 (2014). However, Connecticut law is also clear that this extrinsic evidence must come from the parties to the contract and such extrinsic evidence would not include the types of material relied upon by Liberty. *Conn. Ins. Guar. Ass'n v. Drown,* 314 Conn. 161, 195 (2014)(concurring opinion). It appears that Liberty does not seek to present a novel question of law to the Connecticut Supreme Court, but rather, to undo binding and settled law it finds unfavorable.

## CONCLUSION

For the foregoing reasons, the plaintiffs, Steven Karas and Gail Karas, respectfully request that this Honorable Court decline certifying any questions to the Connecticut Supreme Court.

> **PLAINTIFFS,**
> **STEVEN KARAS and**
> **GAIL KARAS**
>
> By: */s/ Jeffrey R. Lindequist, Esq.*
>     Jeffrey R. Lindequist, Esq.
>     One Monarch Place, Suite 2220
>     Springfield, MA 01144
>     (413) 736-4101 – *Telephone*
>     (413) 736-4582 – *Facsimile*
>     jlindequist@mdparkerlaw.com
>     Federal Bar #ct29425

## CERTIFICATE OF SERVICE

I hereby certify that on **January 10, 2018** a copy of foregoing **Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion for Certification of Questions to the Connecticut Supreme Court** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

> /s/ *Jeffrey R. Lindequist, Esq.*