UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN KARAS, and<br>GAIL KARAS,<br>      Plaintiffs,<br><br>v.<br><br>LIBERTY INSURANCE CORP.,<br>      Defendant. | No. 3:13-cv-01836 (SRU) |

## ORDER CERTIFYING QUESTION TO THE CONNECTICUT SUPREME COURT

Steven and Gail Karas sued their insurer, Liberty Insurance Corp. ("Liberty"), for denying coverage under their homeowners' insurance policy for a loss to their basement walls. The Karases allege that Liberty (1) breached its insurance contract with the Karases; (2) breached the implied covenant of good faith and fair dealing; and (3) committed unfair and deceptive practices proscribed by the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). Liberty moved for summary judgment on September 5, 2017. Doc. No. 57. At a hearing held on December 14, 2017, Doc. No. 69, I denied Liberty's motion with respect to the breach of contract claim and granted it with respect to the bad faith and CUTPA/CUIPA claim, substantially for the reasons stated in my decision in *Roberts v. Liberty Mutual Insurance Co.*, 264 F. Supp. 3d 394 (D. Conn. 2017).

On December 20, 2017, Liberty moved to certify questions to the Connecticut Supreme Court. Doc. No. 70. The Karases initially opposed certification, but changed their position upon learning that my colleague United States District Judge Robert N. Chatigny was likely to certify questions in another concrete collapse case, *Vera v. Liberty Mutual Fire Insurance Co.*, 3:16-cv-00072 (RNC). All parties to both cases now support certification. Furthermore, the question presented by this case and by *Vera*—whether the definition of "collapse" given in *Beach v.*

*Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987), requires coverage in the present circumstances—has the potential to resolve a large number of lawsuits pending throughout the state.[1] Therefore, I grant Liberty's motion to certify questions to the Connecticut Supreme Court.

## I.     Standard of Review

Under Connecticut law, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). When deciding whether to certify a question to the Connecticut Supreme Court, a court should consider, among other factors, "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). "Where a question . . . implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003).

## II.    Background[2]

The Karases' house is among many in northeastern Connecticut built with concrete supplied by the J.J. Mottes Concrete Co. ("Mottes"). The stone aggregate used in Mottes concrete contains significant amounts of pyrrhotite ($Fe_{1-x}S$), a ferrous mineral that reacts with water, oxygen, and concrete paste to form expansive secondary minerals such as gypsum,

---

[1] In addition to a dozen or more federal lawsuits, the state "judicial district of Tolland presently has over forty such cases pending." *See Roy v. Liberty Mut. Fire Ins. Co.*, 2017 Conn. Super. LEXIS 506, at *1 n.1 (Conn. Super. Ct. Feb. 22, 2017).

[2] Except where otherwise indicated, the facts are taken from the parties' Local Rule 56(a)1 and Local Rule 56(a)2 Statements and their accompanying exhibits.

ettringite, and thaumasite. The expanding minerals crack and destabilize the concrete, "lead[ing] to [its] premature deterioration." *See generally* Conn. Dep't of Consumer Prot., *Report on Deteriorating Concrete in Residential Foundations*, App'x D, at 52 (2016).

In October 2013, the Karases discovered that their basement walls were cracking, crumbling, and deteriorating in the manner typical of Mottes concrete. On November 15, 2013, the Karases reported a claim under their homeowners' insurance policy to Liberty. Liberty denied the Karases' claim the same day, asserting that the loss described was "deterioration" and was therefore not covered under the policy.

On December 11, 2013, the Karases filed suit against Liberty, contending that the loss was a "collapse" under the construction given in *Beach v. Middlesex Mutual Assurance Co.* The Karases' policy covers "collapse" as follows:

> *Collapse*. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
>
> . . .
>
> b. Hidden decay;
>
> c. Hidden insect or vermin damage;
>
> d. Weight of contents, equipment, animals or people;
>
> e. Weight of rain which collects on a roof; or
>
> f. Use of defective material or methods in construction, remodeling or renovation.
>
> Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included . . . unless the loss is a direct result of the collapse of a building.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

3

In *Beach v. Middlesex Mutual Assurance Co.*, the Connecticut Supreme Court held that the term "collapse" in a homeowners' insurance policy, when otherwise undefined, was "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." 205 Conn. at 252. The *Beach* Court specifically rejected the insurer's contention that "'collapse' . . . unambiguously contemplates a sudden and complete falling in of a structure," but did not further define the standard of "substantial impairment of [] structural integrity." *Id.* at 250, 252. In the present case—as in many others pending in this district—the parties essentially dispute whether the damage constitutes a "collapse" under *Beach*.

## III. Discussion

In previous concrete collapse cases, I have declined to certify state law questions to the Connecticut Supreme Court. I determined that "there were 'several Connecticut state court cases . . . applicable to the legal question[s] raised,'" and concluded that "sufficient precedents exist[ed] for me to make a prediction of how the [Connecticut Supreme Court] would decide the question[s]." *Roberts*, 264 F. Supp. 3d at 402 n.4 (quoting *Goodlett v. Kalishek*, 223 F.3d 32, 37 n.4 (2d Cir. 2000); *Karagozian v. Luxottica N. Am.*, 2016 WL 2944149, at *4 (D. Conn. May 20, 2016)). Like my colleague United States District Judge Victor A. Bolden, I continue to think that the standard enunciated in *Beach* is "relatively clear." *See Belz v. Peerless Ins. Co.*, 204 F. Supp. 3d 567, 464 (D. Conn. 2016). Nevertheless, because this "unsettled question of state law raises important issues of public policy," and is "likely"—indeed, almost certain—"to recur," *see In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 69 (2d Cir. 2017) ("*World Trade Ctr.*"), I now deem it advisable to seek direct guidance from Connecticut's highest court.

Conn. Gen. Stat. § 51-199b(d) authorizes "[t]he Supreme Court [to] answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an

4

issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Those criteria are met here. First, appellate guidance with respect to the definition of "collapse" will be "determinative" of not only this case, but also many others pending throughout the state. A final resolution of the issue "will assist the administration of justice in both federal and state courts." *Parrot*, 338 F.3d at 145.

Second, "there is no controlling appellate decision," because *Beach* (though highly instructive) arguably "provides insufficient guidance." *Id.* at 144. No Connecticut appellate decision has squarely applied *Beach* and arrived at a definition of "substantial impairment of structural integrity."[3] Heretofore, I and my colleagues on the federal and state trial courts have felt that "sufficient precedents exist for us to make a prediction of how the [Connecticut Supreme Court] would decide the question." *See Goodlett*, 223 F.3d at 37 n.4. But in light of the frequency with which the collapse issue has recurred, I now conclude that certification would "save time, energy, and resources" by enabling the state's highest court to provide a "conclusive" interpretation of "substantial impairment of structural integrity." *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (internal quotation marks omitted); *Freedman v. Am. Online*, 412 F. Supp. 2d 174, 191 (D. Conn. 2005). In short, certification "will provide the

---

[3] A Superior Court decision, *Sansone v. Nationwide Mut. Fire Ins. Co.*, 47 Conn. Supp. 35, 39 (Conn. Super. Ct. 1999), applied *Beach* and was affirmed and adopted in its entirety by the Appellate Court. 62 Conn. App. 526 (2001) (per curiam). *Sansone* indicated that "whether a plaintiff has proven [a substantial] impairment is a question of fact," 47 Conn. Supp. at 41, which supports my conclusion in *Roberts* that "whether a building has suffered a substantial impairment of [ ] structural integrity is a question . . . of fact, not one of law." *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 410 (D. Conn. 2017) (internal quotation marks omitted). *Sansone* ultimately was decided on other grounds, however. The Superior Court held that there was no coverage because the plaintiffs' loss "was the proximate result of . . . [an] excluded" cause—termite damage—and the insurance policy at issue did not "ma[ke] specific reference to collapse that ensues from otherwise excluded activity." 47 Conn. Supp. at 41. Therefore, *Sansone* is "inconclusive" with respect to the question here. *See Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003).

5

Connecticut Supreme Court with the opportunity to decide this . . . repetitive question and to promote uniformity in its law." *Hume v. Hertz Corp.*, 628 F. Supp. 763, 767 (D. Conn. 1986).

I also think that certification is warranted because the concrete collapse cases "are plainly of great importance to the State." *See World Trade Ctr.*, 846 F.3d at 69. Not only is "[i]nsurance . . . an important industry in Connecticut," *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency*, 644 F.3d 166, 172 (2d Cir. 2011), but also the concrete collapse issue affects thousands of Connecticut residents and "implicates broad questions of Connecticut public policy."[4] *See Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015). Determining the extent to which the substantial loss should fall on homeowners or on their insurers entails "value judgments and important public policy choices that the [Connecticut Supreme Court] is better situated . . . to make." *Beck Chevrolet Co. v. GM LLC*, 787 F.3d 663, 682 (2d Cir. 2015).

Liberty has requested that I certify the following three questions:

 1. Is "substantial impairment of structural integrity" the applicable standard for "collapse" under the provision at issue?

 2. If the answer to question one is yes, then what constitutes "substantial impairment of structural integrity" for purposes of applying the "collapse" provision of this homeowners' insurance policy?

 3. Under Connecticut law, do the terms "foundation" and/or "retaining wall" in a homeowners' insurance policy unambiguously include basement walls? If not, and if those terms are ambiguous, should extrinsic evidence as to the meaning of "foundation" and/or "retaining wall" be considered?

Mot. Certification, Doc. No. 70, at 1.

---

[4] As many as 34,000 homes may be affected by collapsing concrete. *See* Lisa W. Foderaro & Kristin Hussey, *Financial Relief Eludes Connecticut Homeowners with Crumbling Foundations*, N.Y. Times, Nov. 14, 2016, https://www.nytimes.com/2016/11/15/nyregion/financial-relief-eludes-connecticut-homeowners-with-crumbling-foundations.html.

I conclude that only the second question merits certification. With respect to the first question, there is no dispute that the insurance policy in this case does not define "collapse," which means that *Beach* clearly provides the relevant standard.[5] With respect to the third question, Connecticut courts have "consistently rejected" insurers' arguments concerning the term "foundation," have "determined that th[ose] policy terms were ambiguous," and have "construed them against" the insurers.[6] *Jang v. Liberty Mut. Fire Ins. Co.*, 2018 WL 1505574, at *3 (D. Conn. Mar. 27, 2018); *see also, e.g.*, *Gabriel v. Liberty Mut. Fire Ins. Co.*, 2017 WL 6731713, at *2 (D. Conn. Dec. 29, 2017) (noting prior determination "that the terms 'foundation' and 'retaining wall,' as used in the policy, were ambiguous."); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 164 (D. Conn. 2014); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 115 (D. Conn. 2014) ("Each party thus has a reasonable but different interpretation of the phrases ['foundation' and 'retaining wall'] supported by dictionaries and case law, so the phrases are

---

[5] Liberty asserts that *Beach* "is *not* binding authority with respect to the policy language at issue here," because the policy "define[s] collapse . . . [as] not include[ing] settling, cracking, shrinking[,] bulging[,] or expansion." Mem. Supp. Mot. Certification, Doc. No. 70-1, at 6. In fact, though—as I noted in another concrete collapse case—*Beach* "held that an identically worded exclusion could 'reasonably be read to exclude loss related to "settling, cracking, shrinkage, bulging[,] or expansion,"' only so long as "collapse" d[id] not ensue.'" *Agosti v. Merrimack Mut. Fire Ins. Co.*, 279 F. Supp. 3d 370, 376 (D. Conn. 2017) (quoting *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 251 (1987)). Notwithstanding Liberty's reliance on out-of-state cases, *Beach* clearly controls with regard to the undefined term "collapse."

[6] Most persuasively, Judge Susan Quinn Cobb of the Connecticut Superior Court has observed that the "foundation" and "retaining wall" exclusions are located in a "section of the policy [that] appears to exclude items that would be found outside of a building, and not inside a building, such as an awning, fence, patio, pavement, pool, septic tank." *Roy*, 2017 Conn. Super. LEXIS 506, at *19. Under the interpretive canon of *noscitur a sociis*—which provides that "a word is given more precise content by the neighboring words with which it is associated," *United States v. Williams*, 553 U.S. 285, 294 (2008)—the provision as a whole "suggests that what was intended by th[e] ['foundation' and 'retaining wall'] exclusion language includes only items found outside of the home[,] or at a minimum renders [the language] ambiguous." *See Roy*, 2017 Conn. Super. LEXIS 506, at *20.

7

ambiguous, and the insurance policy should be construed against Liberty Mutual."); *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882, at *4 (D. Conn. Aug. 2, 2010) ("[A] reasonab[e] jury could find that the basement walls of the Bacewiczes' house did not constitute the 'foundation' of the house."). I have not found, and Liberty has not cited, any Connecticut case (state or federal) that ruled for an insurer on the basis of the "foundation" exclusion. Therefore, I do not think that the third question presents a sufficiently "[n]ovel" or "unsettled" question to merit certification. *Arizonans for Official English*, 520 U.S. at 79; *see also Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016, at *10 (D. Conn. Sept. 30, 2015) (declining to "certify the question of whether the terms 'foundation' and 'retaining wall' are ambiguous" because "[t]he Connecticut Supreme Court . . . has provided the necessary guidance for this Court to determine whether, under Connecticut law, an ambiguity exists in a given contract"); *Gabriel v. Liberty Mut. Fire Ins. Co.*, 2015 5684063, at *4 (D. Conn. Sept. 28, 2015) (declining to certify question whether "the terms 'foundation' and 'retaining wall' . . . [are] ambiguous' because court was "capable of making a sound decision, in light of the applicable authorities, that the terms 'foundation' and 'retaining wall' are ambiguous in the context of the policy language at issue in this case").

Liberty's second proposed question does warrant certification, however. In *Roberts*, I "interpret[ed] *Beach* to require that a 'collapse'—in the form of 'substantial impairment of [ ] structural integrity'—be proved by evidence that a building 'would have caved in had the plaintiffs not acted to repair the damage.'" 264 F. Supp. 3d at 407 (quoting *Beach*, 205 Conn. at 249). For the reasons discussed above, Connecticut's highest court should have the opportunity to decide whether my interpretation of *Beach* was correct. Therefore, pursuant to Conn. Gen. Stat. § 51-199b(d), I certify the following question to the Connecticut Supreme Court:

8

What constitutes a "substantial impairment of structural integrity" for
purposes of applying the "collapse" provision of this homeowners'
insurance policy?

Of course, "[t]he Connecticut Supreme Court may modify th[at] question as it sees fit and add any pertinent questions of Connecticut law . . . that the Court chooses to answer." *Fireman's Fund Ins. Co.*, 644 F.3d at 173. I will make available to the Connecticut Supreme Court any part of the record in this case that might assist the Court in its review of the issue. This court "retains jurisdiction over this case," and will conduct further proceedings after "the Connecticut Supreme Court has either provided [me] with its guidance or declined certification."[7] *Id.*

## IV. Conclusion

I grant Liberty's motion for certification, Doc. No. 70, and deny as moot its motion to defer ruling, Doc. No. 74. The Clerk shall effect certification to the Connecticut Supreme Court.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of April 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[7] I note that a case currently pending before the Connecticut Supreme Court, *Jemiola v. Hartford Casualty Insurance Co.*, No. SC 19978, might already provide an opportunity to clearly define "substantial impairment of structural integrity." The policy in *Jemiola*, however, included the qualification that the collapse must be "abrupt," which the trial court interpreted to mean that "a 'collapse' requires a sudden and catastrophic type event." 2017 WL 1258778, at *9 (Conn. Super. Ct. Mar. 2, 2017). Thus, the Connecticut Supreme Court might decide *Jemiola* on the grounds that the loss—regardless of whether it constituted a "substantial impairment"—was not "abrupt." The policy in this case, which does not include an "abrupt" or "sudden" qualifier, more squarely presents the issue of what constitutes a "substantial impairment of structural integrity."